## Case No. 17,321.

### WEBB et al. v. PEIRCE et al.

[1 Spr. 192; 14 Law Rep. 200.] [1]

District Court, D. Massachusetts. Nov., 1850.[2]

MARITIME LIENS — AUTHORITY OF MASTER — SUP-PLIES—CHARTER TO MASTER.

1. The master of a vessel, in a port of a state to which she does not belong, has authority, by virtue of his office, to bind his vessel and owners, for necessary supplies.

2. Where the master of such a vessel had taken her on shares, agreeing to victual and man her, he had no right, as between himself and his owner, to obtain provisions upon the credit of the owners.

3. But third persons, ignorant of any special agreement, had a right to trust to the apparent authority of the master: and if they did so in good faith, the owner would be bound personally, for necessary supplies and provisions.

This was a libel in personam, promoted by Messrs. Webb & Low, of Boston, ship-chandlers, to recover payment for stores furnished to the brig Antoinette, owned by the respondents, who lived in Belfast, Maine. At the time the stores were furnished, the brig was lying in Boston, and they were ordered by one Richards, the master, and nothing was said on either side, as to the party to whom credit should be given. The libellants knew the respondents to be the general owners of the vessel, and had dealt with them before as such, and had no acquaintance, or previous dealings, with Richards: and knew nothing of any arrangement between him and the respondents, as to the sailing of the vessel; and charged the stores to the brig Antoinette, and owners. For the defence, it was shown, that at the time the articles were furnished, Richards was sailing the vessel on shares, under the usual agreement, that he should victual and man the vessel, and pay half port charges, the gross earnings being equally divided between him and the owners. The goods furnished were groceries, and like consumable stores; and did not go to the permanent use of the vessel. The contract between the master and owners was parol, for no fixed period, and rested on the general usage. As to this usage, the libellants offered evidence, that under it, the master had no power to appoint another master, in his own place, or to remove one appointed, and that the owners always exercise a general control over the voyages, and remove the master at their pleasure.

R. H. Dana, Jr., for libellants, contended: 1st. Under this contract, the master did not become (as between himself and the respondents) a temporary or special owner, but all the criteria of ownership and control, rested still with the general owners; the contract being either one of employment, the compensation measured by earnings, or one of special part-nership. Emery v. Hersey, 4 Greenl. 407; Lyman v. Redman, 23 Me. 289; Arthur v. The Cassius [Case No. 564]; Skolfield v. Potter [Case No. 12,925]; Fenton v. City of Dublin Steam-Packet Co., 8 Adol. & El. 835.

2d. Even if the master does obtain, under this contract, the control of the vessel, so as to be, between himself and the respondents, the temporary owner, yet the policy of the law does not permit the general owners to set up, against persons who are ignorant of it, a special contract, made with a person whom they are holding out to the world as merely master, and as clothed with the ordinary powers of a master. Rich v. Coe, Cowp. 636; Dry v. Boswell, 1 Camp. 329; Arthur v. The Cassius [supra]; The Nathaniel Hooper [Case No. 10,-032].

3d. Credit is presumed to be given to the general owners. James v. Bixby, 11 Mass. 34; Jones v. Blum, 2 Rich. 475; Cox v. Reid, 1 Car. & P. 602; Ex parte Machell, 2 Ves. & B. 216; Jennings v. Griffiths, Ryan & M. 42; 3 Kent, Comm. 135.

Bradford Sumner, for respondents, contended, that on the evidence, the master was owner for the time being, and as such was solely liable for stores of this description. Reeve v. Davis, 1 Adol. & E. 312; Story, Bailm. §§ 294, 295; 3 Kent, Comm. 135, 140; Abb. Shipp. 41, note, 65, note; Thompson v. Snow, 4 Greenl. 264; Winsor v. Cutts, 7 Greenl. 261; Reynolds v. Toppan, 15 Mass. 370; Taggard v. Loring, 16 Mass. 336; Perry v. Osborne, 5 Pick. 422; Cutler v. Winsor, 6 Pick. 335; Cutler v. Thurlo, 7 Shepley [2 Appl; 20 Me.] 213; Williams v. Williams, 10 Shepley [23 Me.] 17; Lyman v. Redman, Id. 289; Manter v. Holmes, 10 Metc. (Mass.) 402.

Mr. Dana, in reply, said, that in most of the cases cited, it was either proved or assumed, that the master, under the contract set up, had the sole power to direct the employment of the vessel, and to appoint and remove a master under himself; and there was no case where, in the absence of such tests of ownership in him, the general owners had been exempted from liability.

SPRAGUE, District Judge. There has been a great deal of evidence in this case, but the result of the whole is this: The respondents, residing in Belfast, Maine, were owners of the brig Antoinette. They made a contract with Richards, to take her on shares, and be master. Richards was bound to victual and man the vessel, at his own expense. Under this agreement, Richards took the possession and command of the vessel, and his name was inserted in her papers, as master. In the course of her employment, and while so commanded, the vessel being in the port of Boston, was in need of provisions, to enable her to proceed on a voyage, and the master had not the funds wherewith to pay for them. At the request of the master, the libellants furnished the necessary provisions, on the credit of the vessel and

1 [Reported by F. E. Parker, Esq., assisted by Charles Francis Adams, Jr., Esq., and here reprinted by permission. 14 Law Rep. 200, contains only a partial report.]
2 [Reversed in Case No. 17,320.]

owners, and now bring this suit therefor, against the owner. It is objected, in behalf of the respondents, that as the master took the vessel on shares, and was thereby bound to have procured these provisions at his own expense, he was not authorized to bind the owners personally therefor. This defence would be valid against all persons who knew of the special agreement, under which Richards had the command of the vessel. But the libellants had no knowledge thereof, nor were there any circumstances which should have put them upon inquiry. They trusted to the apparent authority of the master to bind the owner. There can be no doubt, that if the relation in which the master stood to the respondents had been what it apparently was; that is, if he had been on wages, in the usual manner, he would have had authority to pledge the personal credit of his owners; and this suit could have been maintained. Does the special agreement, restricting the authority of the master, which was unknown to the libellants, defeat their right? I think it does not. The respondents placed Richards in the command of this vessel, as master, and she was documented accordingly. Richards was thus held out as possessing the usual right and authority of master, in their full extent. Among the usual and well known powers of a master, is that of obtaining necessary supplies, in a foreign port, upon the credit of his vessel and owners. The respondents, when they placed him in the office of master, thereby represented to all persons, that he had authority to bind the respondents, as owners of the vessel, for such supplies as were furnished by the libellants. Upon this representation, the furnishers, acting in good faith, had a right to rely. It is no answer to say, that by a private arrangement between the owner and master, the authority of the latter was to be restricted, or that it was specially agreed, that the latter should not exercise one of the ordinary and usual powers appertaining to his office. As between the owners and the master, he had, indeed, no right to exercise the power so inhibited, and it was a violation of his duty to do so. But as between the owners and third persons, such special and secret restriction can have no effect, and the owners must be held responsible to the libellants, in the same manner as if it had never existed. The view already taken being decisive, I do not think it necessary to consider what weight might be given to the fact, that the respondents were to receive half the earnings of the voyage, which these supplies enabled the vessel to make. Decree for the libellants.

NOTE. Upon appeal to the circuit court, this decree was reversed. [See Case No. 17,320.] Subsequently, in Thomas v. Osborn, 19 How. [60 U. S.] 29, 30, the supreme court say, that in such case, the master may bind the vessel for supplies, but not the owner personally. But this was a dictum only, and has never been decided by the supreme court. Quære, as to the distinction which it sets up. In The Sophie, 1 W. Rob. Adm. 369, the court say, that in these cases, they "never can make a ship responsible for advances and supplies, for which the owner himself, if he were in this country, would not be responsible." So, too, in The Alexander, 1 W. Rob. Adm. 360. And practically, this special ownership leaves the enterprise subject to the same necessities, as if the master were master merely, and not charterer; and the maritime law gives him the same power to borrow, in order to meet that necessity, as if he were not charterer. "There must be nothing in the case to repel the ordinary presumption. that the master acted under the authority of the owners." 3 Kent, Comm. 163. See, also, The Freeman, 18 How. [59 U. S.] 182.